## CROWELL–COLLIER PUB. CO. v. CALDWELL.

### No. 12446.

United States Court of Appeals Fifth Circuit.

Dec. 7, 1948.

Rehearing Denied Jan. 17, 1949.

942

Robt. R. Milam, of Jacksonville, Fla., and Chester H. Ferguson, of Tampa, Fla. (Ralph H. Martin, of Jacksonville, Fla., on the brief), for appellant.

John T. Wiggington and Julius F. Parker, both of Tallahassee, Fla., for appellee.

Before HUTCHESON and SIBLEY, Circuit Judges, and UNDERWOOD, District Judge.

HUTCHESON, Circuit Judge.

When this cause was here before[1] on Caldwell's appeal from a judgment dismissing his complaint, we held that a case of libel per se was alleged. Saying: "Privilege and want of malice should await final decision on the trial", we sent the cause back for trial on the merits. It is here again, this time on Collier's appeal from a judgment on a verdict for $237,500.00.

Urging upon us that the undisputed evidence made out a case within the decision of the Supreme Court of Florida in Layne v. Tribune Co., 108 Fla. 177, 146 So. 234, 86 A.L.R. 466, showing neither wantonness, recklessness, nor carelessness in its publication, and that the case proven, as contrasted with the case alleged, was one of no libel, appellant is here insisting that a verdict should have been directed, or judgment, notwithstanding the verdict, entered in its favor, and that because this was not done, the judgment must be reversed with directions to enter judgment for defendant.

In addition, appellant points to the puffed and swollen verdict as indisputable testimony in support of its insistence that there were so many and such flagrant and prejudicial errors of omission and commission, including the failure to restrain plaintiff's counsel from and rebuke them for making arguments[2] designed and calculated to arouse local and sectional prejudices and

---

[1] Caldwell v. Crowell-Collier Pub. Co., 5 Cir., 161 F.2d 333.

[2] These arguments rang the changes on sectional and local prejudice. Beginning in the opening with their fairly mild appeal to sectional prejudice: "Are you going to let people sitting up at 250 Park Ave. in New York, tell us down here the kind of man we ought to have to run our state?", they reached their crescendo in the closing argument. This went out of the record at one point to make a bitterly personal attack on LaCossit, Collier's editor, at whose suggestion the editorial had been written: "Mr. LaCossit, who struck me as being an unusually intelligent man, seems to have the idea that nobody in Florida could be concerned with giving the fair protection of the law to all people. I believe, from talking to him (note, not 'from the record' but 'from talking with him'), that he has the idea that we live half like savages, with at least one-third of our people, the colored people, con-

stantly in fear and trembling, which all of us, including you men, know is not true. I think he has the idea people make no attempt to solve the problems resulting from the two races living together. I believe he does not think we have sufficient interest in the colored man to try to solve that problem without him writing an editorial painting the picture—saying that the Governor of the state favors lynch law."

Then appealing for a verdict for the full one-half million dollars sued for on the ground that this was necessary to vindicate the Governor and punish the defendant, and declaring:

"The only way the Governor can be vindicated is by a verdict of sufficient size and importance to punish these people and perhaps deter other similar magazines in the future from printing similar stories."

the argument ended on this high note:

"If you do that I think it will go a long way toward solution of a number of

inflame the minds of the jury, as to deprive the defendant of a fair trial. It insists, in short, that the case, instead of having been tried to the jury as a case of libel upon an individual, was tried as a sectional conflict, a case of North against South, and because of the errors of the trial court is not properly charging the jury and in permitting the trial to get out of bounds, the result, as evidenced by the verdict, was a complete miscarriage of justice requiring a reversal.

█ We cannot at all agree with appellant's view that, under the authority of Layne's case, its defense of qualified privilege was made out as matter of law and a verdict should have been instructed for it on that ground. Forward looking in its point of view as the Layne case is, it does not go to the extent claimed for it by appellant. That there is a qualified privilege to publish matters affecting the interest of the general public, there is no doubt, nor any that the publication in this case had to do with such matters.

The authorities, however, are in disagreement as to the nature and extent of this privilege when there is publication to the general public rather than to duly constituted authority and the publication contains misstatements of fact. A majority of the courts have held that the privilege of public discussion is limited to comment or opinion and does not extend to false assertions of fact. A minority have held that even false statements of fact concerning officers and candidates are privileged if they are made for the public benefit and with an honest belief in their truth.[3]

In holding in the Layne case that a daily newspaper may, under particular circumstances, publish a false news dispatch without liability, the Florida Supreme Court has aligned itself with those courts which believe that the public interests are better served by an extension than by a restriction of the privilege. But making plain the narrowness of the way and the straitness of the path when truth, though unwittingly, is forsaken, the court declares that wantonness, recklessness, or carelessness in making such publication would be an abuse[4] of the privilege.

██ It is well settled, too, that a false injurious publication in a public journal for sensation and increase of circulation is in a legal sense malicious.[5] Though, therefore, the general nature and circumstances of the publication and the evidence defendant offered in connection with it do furnish support to the claim of privilege, the evidence taken as a whole presents a jury issue.

█ We are not in any doubt, however, that the judgment must be reversed. As was made clear in the former opinion of this court, the publication attacked was libelous per se only because spoken of the plaintiff in his capacity as Governor. We said [161 F.2d 335]:

"The imputations here do not appear to be such as would affect the plaintiff as an attorney, if he were now practicing, but they would naturally affect him in his office as Governor. * * *

"If the imputations published hold the Governor up as indifferent to a lynching in his State, or condoning it, and approving the work of the mob as saving trouble to the courts, they grievously reflect on him in his office, and if false and unprivileged are actionable per se, injury and damage being implied. * * * A jury might well conclude that the Governor was being held up as unfaithful to his office by reason of facts falsely stated and implied in the editorial."

---

our problems. They sit themselves up in New York and take the position that it is necessary to guide the destiny of the South, based on lies, and tell us how our business should be run, and how everything in connection with our lives should be run. We submit that you will return a verdict for the entire amount sued for. We did not arbitrarily select that figure. We believe it is justified and that the circumstances fully warrant it."

[3] Prosser on Torts, Sec. 94(4) p. 839; Restatement, Torts, Sec. 606; 33 Am.Jur. Libel and Slander, Sec. 162, p. 156. Cf. Newell, Slander & Libel, 4th Ed., Secs. 441–444, 483.

[4] Cf. Restatement, Torts, Secs. 593, 604 and 605.

[5] Newell on Slander and Libel, Sec. 506.

The injury and damage implied from accusations of this kind is actual pecuniary injury and damage,[6] and while it is settled that damages will be awarded in a substantial amount, because of imputations of official misconduct, the illustrations given in the text[7] show that it would have been fanciful in the extreme for the jury to find upon pleadings and proof in this case actual damages in any considerable sum. If, therefore, the verdict in this case were for actual damages alone, it would, of course, be a monstrosity. Nor does the fact that the jury was harangued[8] for heavy punitive damages and the judge in effect directed their allowance[9] substantially help the appellee. It is a general rule of law, more strictly observed in some jurisdictions than in others that the punitive power of the jury is not unrestrained but is to be exercised with discretion, and that exemplary or punitive damages awarded must bear some, though not an exact relation to actual damages.[10] If the verdict in this case were merely excessive in respect both of actual and punitive damages and in respect of the relation between the two, these facts standing alone would not constitute reversible error. But the verdict here was not merely in the ordinary sense an excessive verdict. It was an inordinate one, without precedent or sound legal basis.[11] Induced, as it was, by inflammatory pleading and evidence and by argument which was allowed to go unchecked and unrebuked, the judgment would have to be reversed[12] if the trial had been attended with no other error.

But this is by no means the case. Carried away by the sense of unfolding drama presented by the spectacle of a sectional row, a struggle of North against South, Florida against New York, David against Goliath, Ivanhoe against the Templer, litigants, witnesses, lawyers, and jury seemed to regard the contest as a sporting event, a wager by battle, in which the best battler ought to and would win. As to the judge, though he maintained his complete detachment throughout, he held himself a little too aloof from the trial, was a little too much the moderator, not quite enough the administrator, with the result that the trial got out of bounds.[13] It was not only that the judge refused to grant the motion for a change of venue so that the drama might be played out in some place other than Tallahassee, the official and personal residence of the Governor. This, if standing alone, would not, we think, justify reversal. Such matters are within the discretion of the trial judge, and we cannot upon this evidence say that his discretion was abused. But this did not stand alone. He failed to strictly exclude from the consideration of the jury all references to plaintiff's proposal to contribute to the Florida Agricultural & Mechanical Col-

---

[6] 33 Am.Jur., Libel and Slander, Sec. 207, p. 196.

[7] 33 Am.Jur., Libel and Slander, Secs. 213–214.

[8] The closing arguments for plaintiff iterated and reiterated its demand for vengeance, and over and over again extorted the jury to punish these New Yorkers and teach them and their kind a lesson, that they could not undertake to run the South, by awarding damages for the full amount sued for.

[9] The court charged the jury:
"If you should find for the plaintiff in this case you have the duty also of finding that the plaintiff is entitled to recover punitive damages. The amount of those punitive damages lies entirely within your discretion except as to this, that the total amount of recovery which plaintiff can have in this case cannot exceed, in toto, the total amount claimed by him in the declaration." (Emphasis supplied.)
And upon request of counsel for plaintiff, the court followed this with the statement: "The maximum amount of damages claimed in this case is the sum of $500,000."

[10] 15 Am.Jur., Damages, Sec. 265 et seq., particularly Secs. 268, 269 and 270; Ann. 33 A.L.R. 384; 81 A.L.R. 912.

[11] Newell, Slander & Libel, Secs. 727, 789, 790 and 791.

[12] F. W. Woolworth Co. v. Wilson, 5 Cir., 74 F.2d 439, 98 A.L.R. 681; London Guarantee & Accident Co., Ltd. v. Woelfle, 8 Cir., 83 F.2d 325.

[13] Maryland Casualty Co. v. Reid, 5 Cir., 76 F.2d 30.

lege for Negroes such damages as the jury might award. He permitted the inflammatory arguments to go on unchecked, and when counsel for defendant made vigorous objections to the argument as highly improper, inflammatory, and prejudicial, and requested the court to instuct the jury to disregard them, the court said merely: "Objection overruled. Request denied. Exception noted." In addition, instead of instructing the jury as to their right, in the exercise of informed discretion, to find for the plaintiff for punitive damages, he instructed them, "If you should find for the plaintiff in this case, you have the duty also of finding that the plaintiff is entitled to recover punitive damages", and gave them to understand that the only check on their unbridled power to award such damages was the $500,000 limit plaintiff had set in the petition.

On another trial, the greatest care should be taken to try this case not as a public gladiatorial exposition but an ordinary trial for libel. In order to insure this, a change of venue, if requested, should be granted. All reference to the plaintiff's proposal to donate to the Negro college the avails of his suit should be rigorously excluded. Appeals to sectional and local prejudices should be vigorously suppressed. The jury should be carefully instructed in regard to punitive damages: that they may, not that they must, award them; and that while the award is within their discretion, this discretion is not an unbridled, but a sound, one to be exercised on considerations of what, under the evidence, would be a reasonable and proper verdict. Further, since the defendant did not make a retraction, it was error to charge upon retraction under the Florida statute and no reference to the statute should be made or permitted. As to the other complained of errors of omission and commission in the charge, it will serve no useful purpose to consider or discuss them. It will be sufficient, without approving or disapproving any of the complaints, to say that on another trial the charge should more clearly distinguish between the malice implied, because the publication is libelous per se, and actual malice, malice in fact, that kind of malice which

constitutes an abuse of a qualified privilege and makes the publisher liable notwithstanding the privilege. The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.