56 So.2d 720 (1952)
MAIBORNE
v.
KUNTZ.
Supreme Court of Florida, Division B.
February 8, 1952.
Rehearing Denied February 29, 1952.
*721 Edgar G. Hamilton and Irwin L. Langbein, West Palm Beach, for appellant.
Williamson, Gunster & Baugher, Palm Beach, and Earnest, Lewis, Smith & Jones, West Palm Beach, for appellee.
MATHEWS, Justice.
This suit grew out of a dispute between two elderly men, Harry C. Maiborne and Charles Kuntz, Sr. Mr. Maiborne was a retired manufacturer of electrical appliances and Mr. Kuntz, Sr. was a retired manufacturer of hats. Kuntz stated that he had sold his business for a quarter of a million dollars and retired. They were residents of Palm Beach. Kuntz had a son by the name of Charles Kuntz, Jr. All the parties were neighbors. A small boat was owned by either Charles Kuntz, Sr. or Charles Kuntz, Jr. The evidence was conflicting.
The actual ownership of the boat is not material because under the testmony, Maiborne was fully justified in believing that the boat was owned by Kuntz, Jr., or that Kuntz, Jr. had full authority to sell the boat and fix the price. Kuntz, Jr. authorized Maiborne to sell the boat for $35, with the agreement that he would have all over that amount which he might receive. After Maiborne sold the boat, Kuntz, Sr. found out about it and asserted that the boat belonged to him and finally demanded $40 for the boat. After bitter disputes between these two elderly men, Maiborne offered to pay the additional $5 but Kuntz, Sr. refused it, saying that he wanted his boat back.
Kuntz, Sr. finally went to the Police Department and contacted Detective H.O. Large of the Palm Beach Police Force. By stipulation of the parties an extract of the daily report submitted by Detective H.O. Large of the Town of Palm Beach was filed in evidence. This report reads as follows:
"6:00 PM 1-5-49
"Chas. J. Kuntz, Apt. 5, Lido Pools came to the station and reported that Harry Maiborne took without the consent of the owner `Chas. J. Kuntz' one dingy boat from the parking lot of the Lido Pools on or about Nov. 27th, 1948. Value of dingy when bought $175.00.
"Maiborne arrested by me at his apt. in the Lido Pools Bldg. at 6:20 PM. He was put through our I.D. Room and then turned over to the County. He is now out on $500.00 bond.
"(Signed) H.O. Large".
At the time of the trial Kuntz, Sr. was asked the question: "I ask you, did you ask them to make the arrest that night?" and he answered: "I told him it was necessary, yes, to arrest him". Large, the detective, testified, that Kuntz, Sr. came down one night and wanted some action and wanted it then.
As a result of the activities of Kuntz, Sr. and his complaints to the Police Department, and his insistence upon arrest, Maiborne was arrested and was put through the usual procedure of being booked and finger-printed. He was placed in a cell at the Palm Beach Police Station and afterwards taken to the County Jail in Palm Beach. Kuntz, Sr. was present at the Police Station when Maiborne was brought in under arrest. Maiborne was finally tried in the Criminal Court of Record on a charge of grand larceny of the boat in question and was acquitted by the jury. He filed this suit against Kuntz, Sr. for malicious prosecution, which resulted in a verdict in favor of Maiborne in the sum of $10,000. At the trial for malicious prosecution all of the conversations between the parties, the happenings at the police station, much of the evidence on the trial for grand larceny and other testimony was before the jury. It is of particular significance that Kuntz, Sr. admitted at this trial that he did not believe Maiborne intended to steal the boat.
*722 Upon motion for new trial filed by Kuntz, Sr. the Court denied the motion in the event the plaintiff should within 10 days file a remittitur in the amount of $9,000, but provided that in the event the plaintiff failed to file such remittitur, the motion for new trial be granted, on the question of damages.
This appeal is prosecuted from the order above mentioned by Maiborne, the plaintiff in the Court below, appellant here. Assignments and cross-assignments of error were filed. The assignments and cross-assignments of error propounded three questions: (1) "Does the evidence show that the defendant procured the arrest, jailing and prosecution of the plaintiff upon information without probable cause?" (2) "Is the evidence sufficient to show that the defendant maliciously procured and caused the plaintiff to be arrested and jailed and prosecuted on information for larceny of a boat?" and (3) "Was the verdict of the jury in the sum of $10,000 excessive?"
The first two questions may be considered together. There was no probable cause to have Maiborne arrested, prosecuted and jailed upon a charge of grand larceny. There was no secrecy about the fact that father and son wished to sell the boat. There was no surreptitious or secret maneuvering on the part of the defendant in removing the boat or taking it away. The father and son were living together in the same apartment. The son used the boat most of the time. The motor which was used on the boat was without question the property of the son. The father permitted the son to hold himself out as the owner of the boat or as having authority to sell the boat. Kuntz, Sr. admitted that he did not believe that Maiborne intended to steal the boat. Even after the boat was sold the father agreed to the sale at a price of $40 and before he complained to the Police Department, he was offered the additional $5 which he refused to accept. Under these facts Kuntz, Sr. did not have probable cause to procure the arrest, jailing and prosecution of Maiborne.
But Kuntz, Sr. contends that he did not procure or cause the arrest of the plaintiff. He complained to the Police Department; he told them it was necessary to arrest Maiborne that night; he wanted action and he wanted it then; he gave the information upon the police report. The City Police could not have arrested for grand larceny without a warrant, except for the information furnished by Kuntz, Sr. There was sufficient evidence for the jury to determine that he procured or caused the arrest and prosecution of Maiborne.
It is contended, however, that the action of Kuntz, Sr. was without malice. From the brief summary of the testimony which we have outlined in this case, and the further fact that Kuntz, Sr. testified falsely in the prosecution on the charge of grand larceny, was sufficient to justify the jury in finding that there was malice.
The fixing of the amount of damages was peculiarly within the province of the jury. The criminal courts and criminal prosecutions should not be resorted to for the purpose of collecting a debt or settling petty civil matters which could be well determined in a civil suit in a court of a Justice of the Peace. In this case damages may have been compensatory or punitive or both. There was sufficient foundation for the jury to include punitive damages. A verdict of $1,000 against a man with a small amount of property, or against a man who earns his living "by the sweat of his brow" may be severe punishment, while the same amount of damages against a man worth a quarter of a million dollars would be no punishment. See Jones v. Greeley, 25 Fla. 629, 6 So. 448, and Montgomery v. Knox, 23 Fla. 595, 3 So. 211.
The order of the Circuit Court on the motion for new trial reducing the amount of damages should be set aside, the verdict of the jury re-instated, and a proper judgment entered therein.
Reversed, with directions for further proceedings in accordance with this opinion.
SEBRING, C.J., and CHAPMAN and ROBERTS, JJ., concur.