**Walter Scott SMITH, Appellant,**

v.

**Edward A. McNULTY, Appellee.**

**No. 18741.**

United States Court of Appeals
Fifth Circuit.

Sept. 1, 1961.

James A. Smith, Joseph Anthony Reinert, Miami, Fla. (Wicker, Smith,

Blomqvist, Hinckley & Davant and Robert King High, Miami, Fla.), for appellant.

Jackson L. Peters, Miami, Fla. (Knight, Smith, Underwood & Peters, Miami, Fla., of counsel), for appellee.

Before TUTTLE, Chief Judge, and CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

This appeal presents the questions whether the awards by the jury in this personal injury suit of $37,500.00 compensatory damages and $20,000.00 punitive damages are excessive as a matter of law.[1] Although initially denying, in his answers to interrogatories, that he had been involved in any collision at all, the appellant, at the opening of the trial, admitted the liability of appellant for compensatory damages.[2]

It is undisputed that, at the time of the accident, plaintiff McNulty was driving west on a trunk highway in Collier County, Florida, and defendant-appellant Smith approached him from the rear at a very high rate of speed. The appellant swung his car into the eastbound lane with the purpose of passing appellee's car and found upon doing so that he was being met by a truck going east. He swung back then into the westbound lane and, immediately, his car came in contact with appellee's car after skidding 63 feet on the pavement. Appellant ran 188 feet along the edge of the pavement and then brought his car back into the westbound lane and proceeded at high speed a distance of approximately ten miles when his car ran out of gas.

Appellee was driving, when struck, at a rate of about forty to forty-five miles an hour. Appellant's car ran into the rear of appellee's car, jolting him out of his seat and knocking his head against the top of the car with considerable force, which produced a period of unconsciousness. He fell into his wife's lap, his car careened across the highway at a forty degree angle and was struck broadside by an eastbound automobile. Appellee's car then continued off the south side of the road, went over a ditch and came to rest against a pile of coral rock about thirty or forty feet off the shoulder.

Appellant continued, without slowing up for the accident, and drove his car at a rate of speed estimated at eighty miles per hour, and the car was seen zigzagging from one side of the highway to the other. When his car finally ran out of gas, he stopped it in the middle of the westbound lane of travel. When he was accosted by an enlisted man in the Coast Guard who had been sent to find the Cadillac car which had caused the accident, he immediately tried to start his car again with the object of escaping. He was unable to do so because there was no gas. Upon the arrival of a constable and a state highway patrolman, they, with the help of two Coast Guardsmen, arrested the appellant and, after a hard struggle, got him into the police car. Immediately, he bolted across the seat and opened the door on the other side, and another struggle ensued when the officers were engaged in getting him back into the car. They testified that appellant was very drunk, was surly and belligerent, and was defiant of their authority.

There was evidence from which the jury was warranted in finding that appellee McNulty had a life expectancy of 13.40 years, that he had worked him-

---

1. From the record it appears that appellant was attacking the submission to the jury of the question of punitive damages and the award of any amount. With commendable candor, however, in the brief before us the appellant states: "At the outset, we must candidly admit that the undisputed facts of this case would warrant a jury to return a verdict for exemplary damages."

2. His attorney stated at the opening of the trial: "I would like to admit the question of liability for compensatory damages. There is a claim for punitive damages which I do not admit; but I would like to admit the question of liability and the question of compensatory damages. Secondly, I would like to inform the jury that I represent the insurance company and Mr. Smith is not here, and I would like to inform them who I actually represent in this case."

**926**

self up from a lowly beginning in construction work and was, at the time of the accident, a road contractor; that he had a very keen and sharp mind and unusual business acumen. The blow he received from the collision rendered him unconscious for about five minutes. He was treated over a long period by a number of doctors, including neurosurgeons. He suffered frequently from headaches, pain in the back and in the neck and a general deterioration in his mental faculties, particularly in his ability to remember. I. Q. tests were performed and the specialists found that he had been reduced to a high grade moron on the verbal test and a low grade moron on the performance test. About four electroencephalograms have been performed, and all of them indicated generalized brain damage. The prognosis was that his condition would deteriorate.

His unreimbursed expenses amounted to $1,230.00 and the damage to his car was approximately $400.00. Following the accident and up to the time of trial he had been unable to perform any gainful occupation, and the proof warranted the conclusion that he had earned net from twelve to fifteen thousand dollars annually prior to the accident. From this testimony we think it is clear that the jury was warranted in returning the verdict for compensatory damages.

We think also that the award of punitive damages was not legally excessive. It bore a reasonable relationship to the actual damages, although appellant admits in his brief that such a relationship is not necessary under Florida law, citing the case of Hutchinson v. Lott, Fla.App., 110 So.2d 442. But cf. Crowell-Collier Pub. Co. v. Caldwell, 5 Cir., 1948, 170 F.2d 941.

▇▇ Appellant excepted to the characterization of him as a monster in the

argument to the jury by the appellee. We do not think that, under the facts of this case, this was reversible error. Considerable latitude in argument is permitted both under Florida law and federal practice.[3]

Ordinarily, the passing on a motion for a new trial based upon the amount of a jury's award is a matter within the discretion of the trial court.[4]

Finding no reversible error, the judgment of the court below is

Affirmed.

---

3. Cf. our use of the term "monstrous" in Firemen's Mutual Insurance Co. v. Aponaug Co., Inc., et al., 5 Cir., 1945, 149 F.2d 359, 363.

4. Fruit Industries, Inc. v. Petty, 5 Cir., 1959, 268 F.2d 391, certiorari denied, 361 U.S. 915, 80 S.Ct. 261, 4 L.Ed.2d

186; New Amsterdam Casualty Co. v. Wood, 5 Cir., 1958, 253 F.2d 71; Atlantic Refining Co. v. Evans, 5 Cir., 1958, 251 F.2d 277; and Ohio Casualty Co. v. Brown, 5 Cir., 1957, 241 F.2d 795; and cf. Crowell-Collier Pub. Co. v. Caldwell, 5 Cir., 1948, 170 F.2d 941.