**WYNN OIL COMPANY, a corporation, Plaintiff,**

v.

**PUROLATOR CHEMICAL CORPORATION, a corporation et al., Defendants,**

v.

**Carl E. WYNN and Wesley E. Bellwood, Additional Defendants to the Counterclaim.**

**No. 71–864–Civ–J–S.**

United States District Court, M. D. Florida, Jacksonville Division.

July 11, 1974.

John F. Corrigan, Corrigan, Werber & Moore, Jacksonville, Fla., for plaintiff.

John A. Devault III and Chester Bedell, Bedell, Bedell, Dittmar, Smith & Zehmer, Jacksonville, Fla., Denis Mc-

Inerney, Cahill, Gordon & Reindel, New York City, for defendants.

## MEMORANDUM OF DECISION DENYING DEFENDANTS' MOTIONS FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND NEW TRIAL

BOLDT, Senior District Judge, Sitting by Designation.

The written briefs of defendants supporting their motions for Judgment Notwithstanding the Verdict and New Trial were thoroughly read and considered by the Court prior to oral argument of those motions on June 10, 1974. After closely following the arguments, which concluded shortly after mid-day, the Court immediately began a final review of the briefs and of each contention of defendants in the light of both supporting and opposing briefs and the arguments of counsel. Upon that basis the court concluded late in the evening that defendants' motions should be denied except for reduction of a Count V punitive damage award. An order to that effect was drafted, typed and entered the next morning, the court advising therein that a Memorandum of Decision would be entered at or before entry of final judgment at the time of a hearing upon an award of attorneys' fees as to the Sherman Act violations of which the jury found defendants liable on Count III.

In briefs supporting their Judgment Notwithstanding the Verdict and New Trial motions defendants asserted a considerable number and variety of contentions. However, the only grounds urged in oral argument were confined to: (1) errors in the verdict (allegedly duplicative damage awards); (2) excessive punitive damage awards; and (3) jury instructions on conspiracy. The Court having fully considered defendants' written briefs and finding the contentions therein, other than those presented in oral argument, to be entirely without merit, this memorandum will be confined to discussion of contentions pre-

sented by defendants in oral argument on their post trial motions.

Without careful review and knowledge of the entire record, especially including the trial transcript of which copies were available to counsel at the end of every trial day, it would be impossible for anyone, however able and experienced, to fully comprehend or fairly determine the merit or lack thereof, of each particular ground asserted by defendants in briefs and in oral argument. Defendants had a minimum of four attorneys in constant attendance every trial day, although only two of them interrogated witnesses and took part in final argument to the jury. Nevertheless, the oral argument for defendants on their post verdict motions, which presumably covered the main thrust of defendants' contentions, was presented by a then recently engaged attorney, who had not participated in the trial and who, in response to inquiry by the Court, admitted he had not read the entire transcript but only selected portions pertaining primarily to the verdict form and jury damage awards. This attorney criticized the form and substance of the verdict form, although he had no first hand knowledge of how the verdict form was developed through a series of drafts, with the final form approved in all particulars by defendants' trial counsel with three exceptions, none of which, because of the jury findings, is now significant.

## SUMMARY OF RECOVERY SOUGHT AND EACH JURY VERDICT THEREON.

Plaintiff sought recovery against defendants on eight counts, each of which was based on alleged facts and legal grounds distinct and different from all other counts:

1. In Count I plaintiff sought recovery against Purolator Chemical Corporation and Adams and Newman, individually, for an alleged *unpaid balance for goods sold and delivered.* Defendants denied that the amount sought was due and owing and alleged set offs against the amount claimed in various particulars. The jury found defendants liable for an amount of $31,713.46, which was $7,056.41 less than the amount claimed by plaintiff.

2. In Count II plaintiff sought recovery against Purolator Chemical, as successor to Adams and Company, for alleged *breaches of distributor agreements between plaintiff and Adams and Company* in one or more of four alleged particulars chargeable to Adams and Company and Purolator. Defendants denied breach of contract or misconduct in any particular alleged or damage resulting therefrom. The jury found in favor of plaintiff and awarded damages for breach of contract in the sum of $200,000.00.

3. In Count III plaintiff sought damages against Adams, Newman, Purolator Chemical and Purolator, Inc. for *alleged Sherman Act violations* in three different categories, all of which alleged violations and damages therefrom were denied by defendants:

(a) Horizontal or vertical *price fixing*; or horizontal or vertical *territorial and customer allocations;*

The jury found in favor of plaintiff against all defendants under category (a) and awarded compensatory damages therefor in the sum of one million dollars.

(b) *Conspiracy to monopolize* commerce in the automotive petrochemical additive domestic market;

The jury found in favor of plaintiff against all defendants under category (b) and awarded compensatory damages in the sum of one million dollars. In response to Verdict question 3.2(d) the jury found against plaintiff on its contention that one or more of defendants violated the Sherman Act by means of tie-in sales and accordingly the jury did not award damages therefor.

(c) *Attempt to monopolize* a part of trade or commerce in the automotive petrochemical additive domestic market.

The jury found in favor of all defendants and awarded no damages under category (c).

Under Section 4 of the Clayton Act, 15 U.S.C. § 15, both awards under Count III must be trebled and attorney's fees and costs awarded.

4. In Count IV plaintiff sought recovery of compensatory and punitive damages against Purolator, Inc. for unlawful and/or *malicious interference with contractual and business relationships* between plaintiff and Adams and Company. Defendants denied unlawful conduct in the particulars alleged by plaintiff or any damage resulting therefrom. The jury found in favor of plaintiff, awarding compensatory damages in the sum of one million dollars and punitive damages in the sum of four million dollars.

5. In Count V plaintiff sought compensatory and punitive damages against Purolator, Inc. and Purolator Chemical for alleged *wrongful interference with contractual relationships* between Wynn Oil and certain of its domestic distributors. Defendants denied any wrongful conduct in any alleged particular or damage resulting therefrom. The jury found in favor of plaintiff and awarded compensatory damages in the sum of one million dollars and punitive damages against Purolator Inc. in the sum of two million dollars and against Purolator Chemical in the sum of four million dollars. (The court has reduced this latter award to one million dollars).

6. In Count VI plaintiff sought an *injunction* restraining defendants from conduct alleged to be violative of antitrust and unfair competition laws. Determination of this claim being solely a matter for decision by the court, the jury was directed not to consider this claim or return a verdict thereon.

7. In Count VII plaintiff sought recovery of damages against all defendants for alleged *violation of Florida unfair competition and state antitrust laws.* Defendants denied wrongful conduct in any particular alleged or damage sustained therefrom. The jury found in favor of plaintiff against all defendants and awarded compensatory damages in the sum of one million dollars.

8. In Count VIII plaintiff sought damages and injunctive relief against Purolator Chemical for alleged disruptive use by defendants of the term "Friction Free" and for *infringement of plaintiff's trade mark* "Friction Proofing." Defendants denied wrongful conduct in any particular alleged or damage resulting therefrom. The jury found in favor of defendants and made no award of damages.

9. In their counterclaim, defendants asserted two counts in which they sought recovery of compensatory and punitive damages against plaintiff and individual counterclaim defendants Wynn & Bellwood for:

(a) *Alleged conspiracy to restrain trade and/or monopolize commerce in the automotive petrochemical additive domestic market,* and *attempt to monopolize part of trade or commerce in the additive domestic market; and*

(b) *Alleged conspiracy to wrongfully and/or maliciously interfere with business relationships between Adams and Company or Purolator Chemical and their employees, agents or subdistributors.* The jury found against defendants and in favor of plaintiff and counterclaim defendants as to all three of defendants' above specified claims.

In summary: of the seven counts asserted by plaintiff and submitted to the jury in the verdict form, count by count and item per item, defendants prevailed to the extent that the jury: (1) reduced the amount sought by plaintiff on Count I by approximately 18.2%, allowing for off set of certain items claimed by defendants; (2) denied plaintiff's tie-in sales contentions in Count III; (3) found in favor of defendants on plaintiff's claim of alleged attempt to monopolize in Count III; and (4) found wholly in favor of defendants on Count VIII.

## VERDICT

Defendants' oral argument on their Judgment Notwithstanding the Verdict

and New Trial motions was principally directed to three contentions: (1) that the verdict form submitted to the jury invited conflicting findings and duplicate damage awards, and that the verdict returned by the jury included such duplicate awards; (2) that the damage awards, particularly the punitive awards, were grossly excessive and not justified by the evidence; and (3) that the Court did not properly instruct the jury regarding conspiracy.

### (1) *Form of Verdict:*

■ Several days prior to oral argument, the court suggested to the counsel that a question and answer form of verdict dealing with all major issues, including damage awards, appeared to be desirable from the viewpoint of both plaintiff and defendants. Counsel were requested to consider the matter and suggest basic questions to be put to the jury. No proposals were received from any counsel by the day before final argument. In the meantime, the Court had been preparing a proposed verdict form, copies of which were distributed to counsel prior to the opening of court on the day before oral argument. At the conclusion of the evidence that day, an extensive conference was held with counsel concerning the verdict form. Neither in that conference nor at any other time did counsel for either plaintiff or defendants object to the court's proposal that a question and answer form of verdict be submitted for jury determination of all basic issues in all counts, except Count VI in which plaintiff sought injunctive relief. Counsel both for plaintiff and defendants proposed a number of language changes in the text of the verdict form which, with minor exceptions, were adopted by the Court. Prior to argument to the jury, copies of the final version of verdict form were submitted to counsel for further consideration but no further changes thereon were proposed by counsel and no other objection thereto was made. The principal proposals made by defendants concerning the verdict form related to:

1. Question 3.1(a) dealing with vertical and horizontal territorial and customer allocations;

2. Question 3.3(a) dealing with monopolization;

3. Question 8(a) dealing with trademark infringement.

The jury found for defendants in response to Questions 3.3(a) and 8(a). By their verdict, the jury found there was no attempt to monopolize and no trademark infringement, leaving only defendants' exception with regard to Question 3.1(a). The defendants' proposal was to add a third subsection for vertical customer allocation as distinguished from horizontal allocations under subsection (a). This proposal was not accepted because the court held there was sufficient evidence to sustain a finding of both unlawful vertical and horizontal allocation, and, therefore, no necessity of distinguishing between the two in the verdict form. The court is still satisfied there was ample evidence upon which the jury could have found both types of unlawful allocation referred to in the verdict form.

With the three exceptions above specified, neither counsel made any other objection to the form of the verdict. None of the criticisms of the verdict form emphasized by defendants in final argument were even so much as mentioned by defendants in the several opportunities they had to make objections to and propose changes in the verdict form prior to and even after the final version was submitted to counsel.

### *Duplicate Damage Awards:*

A day or two before final argument, counsel were advised of the Court's proposal that precautions should be taken to preclude any possible duplicative damage awards and requested that counsel submit proposals to that end. Plaintiff promptly submitted a proposal to the Court but defendants never responded to the

Court's request or submitted any proposals on this subject. The Court did not adopt plaintiff's proposal but independently drafted a proposed instruction which was circulated to counsel in ample time for them to consider the draft and submit proposals for modifications or improvements; none were proposed by counsel for either side. The Court further advised counsel that in addition to giving the jury this instruction orally, a written copy of it would be attached to the verdict form as a constant reminder that the jury must not, under any circumstances, make an award of damages in any instance that was to any extent duplicative of any other damage award. Indeed, a further final admonition to the jury on this subject was given just before it retired to the jury room for deliberation.

■ Jurors are presumed to understand and give full, unqualified effect to every final instruction of the Court and thus it must be presumed, unless clearly and unmistakably established otherwise, that the jury followed the non-duplication instruction and gave strict and literal effect thereto. To put it another way, it must be presumed that the jury carefully and meticulously avoided including any award of damages for a specific injury in the amount or amounts awarded for a different specific injury.

■ The findings of the jury as stated in the verdict form, when taken as a whole, clearly show meticulous analysis and detailed consideration of the evidence as to each and every ultimate fact issue presented to the jury and a high degree of understanding and perception in applying all of the Court's instructions. In the opinion of this Court, the jury was particularly careful in avoiding any duplication in their several compensatory damage awards.

The award of an unpaid balance for goods sold and delivered on Count I and the award on Count II for breach of contract, in the opinion of this Court, were both amply supported by the evidence.

Both were totally unrelated to the recovery sought by plaintiff in Counts III, IV, V & VII. As to the five distinctly different claims asserted in those four counts on which the jury found in favor of plaintiff, no evidence on the subject of damages was presented by plaintiff other than substantial evidence by oral testimony and illustrative charts concerning plaintiff's lost profits during the years 1971 through 1973. In final argument this evidence was the sole basis on which plaintiff's counsel, orally and by display of illustrative exhibits, vigorously argued for recovery of lost profits in the total sum of $5,017,-000.00. That amount was the total of plaintiff's lost profits as computed and testified to by the expert witness Calhoun. No other or additional amount of compensatory damages under Counts III, IV, V & VII was ever mentioned in the presence of the jury during final argument.

There can be no possible doubt that the jury understood, as did counsel and everyone present during final argument, that plaintiff was claiming the amount of its lost profits, during the three years when defendants were crippling plaintiff's product distribution and sales, as the measure and amount of the compensatory damages plaintiff sustained by reason of the several different elements of tortious misconduct by defendants as charged in Counts III, IV, V and VII and concisely specified in the jury form. The jury found defendants liable in five of the particulars specified in those counts, each distinctly different from the others, and awarded damages therefor in the total sum of $5,000,000.00. This total was less by $17,000.00 than the amount the jury might have awarded under the testimony of Calhoun.

In the verdict form and instructions of the Court, the jury were directed to fix the amount of damages awarded for each instance in which the jury found defendants' liability established. That each amount awarded was exactly in the same amount, $1,000,000.00, plainly and unmistakably shows that the jury reach-

ed the reasonable and logical conclusion that defendants' five different types of illegal misconduct, secretly plotted and deliberately planned to take sudden effect upon plaintiff, and all having the common ultimate purpose for defendants to take over plaintiff's long and well established means of distributing its products, proximately combined and concurred in equally causing the end result thereof, i. e., plaintiff's lost profits in the sum of $5,000,000.00 during the three years after defendants' misconduct began and continued to take effect upon plaintiff throughout that period.

There was ample evidence to support each and every statement of fact in the last sentence of the preceding paragraph; therefore, it was well within the prerogative of the jury, as Trier of Facts, to find those facts had been proved by a preponderance of either direct evidence or by reasonable inferences and conclusions drawn therefrom.

### (2) *Punitive damages*:

Upon the evidence presented in the case, the jury had a right to find that the corporate defendants' misconduct in every particular was indefensible, deliberately calculated to destroy or extensively frustrate plaintiff as a competitor in the automotive additive market by means extremely reprehensible as well as unlawful. Finding so, they were entitled to award very substantial sums as punitive damages against both Purolator, Inc. and Purolator Chemical considering the net worth and extremely profitable business conducted nationwide by Purolator over a period of many years and the fact that its wholly owned subsidiary, Purolator Chemical, was organized for the specific purpose of accomplishing the reprehensible conduct planned and agreed upon in advance.

█ In the opinion of this Court, the punitive damage awards bear a reasonable relationship to the actual damages sustained by plaintiff. However, Florida law does not require that such a reasonable relationship exist, but only

requires that some actual damage be shown and that the acts of defendants were done with malice. See *Hutchinson v. Lott*, 110 So.2d 442 (Fla.App. 1st, 1959); and *Smith v. McNulty*, 293 F.2d 924 (5th Cir. 1961). Furthermore, actual malice is not an essential element for an award of punitive damages but only legal malice need be shown. *Adams v. Whitfield*, 290 So.2d 49 (Fla., 1974). Under the evidence, the jury were justified in finding that malice, both legal and actual, motivated the conduct of defendants.

█ It appears to be the law of Florida, however, that while the purpose of punitive damages is to punish defendants and serve as a deterrent to them and others, the award of punitive damages should only hurt but not bankrupt a defendant. *Int'l. Union of Operating Eng's., Local No. 675, et al. v. Lassiter*, 295 So.2d 634 (Fla.App. 4th, 1974).

█ It may well be that ultimately Purolator, Inc. will have to pay the punitive damage award against Purolator Chemical; however, the assets and financial circumstances of Purolator Chemical itself, so far as disclosed in the record, are such that it likely would become bankrupt if ultimately required to pay the full $4,000,000.00 punitive damage award in Count V. In the order entered June 11, 1974 this Court indicated doubt whether, in the peculiar fact pattern in this case, the punitive damages as awarded against Purolator Chemical would or should be found excessive under Florida law. That doubt was resolved in favor of Purolator Chemical and on that basis alone the award was reduced to $1,000,000.00. In the opinion of this Court, the reduced amount will substantially punish Purolator Chemical but will not place it beyond reasonable potential financial capacity to pay the reduced award, with or without the assistance of its parent company and fellow culprit. The financial future of Purolator Chemical, to some extent at least, is within the control of Purolator, Inc.

(3) *Jury Instructions on Conspiracy:*

Defendants contend that the Court did not give sufficient instruction to the jury concerning the independent proof necessary to find that a particular defendant participated in the conspiracy. Defendants argue that plaintiff relied on vicarious conspiratorial participation without direct or independent proof of individual participation.

█ Defendants did not submit a proposed instruction, either specific or general, on independent proof of conspiracy participation; and, further, did not except to the conspiracy instructions given by the Court on the ground that independent proof of conspiracy participation was not adequately or correctly covered in the Court's instructions. In these circumstances, the clear and mandatory language of Rule 51 preclude defendants from raising an issue on appeal regarding a subject referred to for the first time at oral argument on post trial motions. Rule 51, Fed.Rules Civ.Proc., 28 U.S.C.A.; and see *Clark-Warwick, Inc. v. Nat'l Fire Ins. Co. of Hartford,* 291 F.2d 828 (5th Cir. 1961).

Counsel for defendants proposed to the Court only two requested instructions dealing with conspiracy (see Defendants' Requested Instructions No. 5 and 6). The substance of both of these requested instructions was fully included in the Court's charge to the jury on the conspiracy issue.

The Court instructed the jury at considerable length regarding conspiracy (See Transcript pp. 6969 through 6978). A careful reading of each and all of these instructions will disclose that the Court repeatedly emphasized the need for proof of participation by each particular defendant in the conspiracy before any such defendant could be liable for damages to plaintiff, and before statements of co-conspirators might be considered by the jury against other defendants alleged to be conspirators. Moreover, the jury were so advised repeatedly during the trial.

Surely, if the subject above referred to was not sufficiently stated or emphasized in the final instructions given to the jury, it would have been noted by at least one of the several learned, long experienced and energetic attorneys for defendants who were present throughout the charge to the jury, and by him called to the attention of his co-counsel during their conference for the sole purpose of considering what exceptions to the instructions should be taken for defendants. That conference began within a few minutes after the charge was given and continued for more than an hour before defendants' exceptions were taken.

█ Thus, if Rule 51 does not preclude defendants from belatedly raising a contention concerning instructions on which the trial court never had an opportunity to act, either before or immediately after the charge was given and before the jury began their deliberations, there is no indication whatever of misunderstanding by the jury or prejudice to defendants, because the subject assertedly omitted was fully covered by the instructions of the Court.

Other than the following statement, further comment by the undersigned on defendants' claims of misconduct by the Court would be unseemly. Prior to preparing for a pretrial conference in this case on February 28, 1974, the undersigned judge had never met, or even heard of, any corporate official, individual party, attorney, juror or witness who in any way participated in this case. At no time before or during trial or at any time since, has the undersigned judge been aware of any action or omission by him that was not reasonably within the discretion of a federal trial judge, or bias or prejudice in any degree as to any party, attorney or ruling in this case.

The order of this Court entered June 11, 1974 denying each and both of defendants' motions for Judgment Notwithstanding the Verdict and New Trial, is hereby affirmed in all particulars.

It is so ordered this 11th day of July, 1974.