349 So.2d 622 (1976)
Earl Lowell LASSITTER, Petitioner,
v.
INTERNATIONAL UNION OF OPERATING ENGINEERS, Respondent.
Earl Lowell LASSITTER, Petitioner,
v.
Dennis WALTON, Respondent.
Earl Lowell LASSITTER, Petitioner,
v.
INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 675, Respondent.
Nos. 47869-47871.
Supreme Court of Florida.
July 21, 1976.
On Rehearing May 26, 1977.
Rehearing Denied September 20, 1977.
*623 Rex Conrad, Ronald A. FitzGerald and Paul R. Regensdorf of Fleming, O'Bryan & Fleming, Fort Lauderdale, for petitioner.
Frank E. Hamilton, III of Hamilton, Douglas & Bennett, Tampa, Woll, Mayer & Gold, Washington, D.C., Cone, Wagner, Nugent, Johnson & McKeown, and Larry Klein, West Palm Beach, for respondents.
PER CURIAM.
Petitions for writ of certiorari have been granted in this cause, and oral argument has been dispensed with.
The decision of the District Court of Appeal, Fourth District, 325 So.2d 408, here under review is quashed with directions that the judgments entered in the trial court be reinstated.
ROBERTS, Acting C.J., and ADKINS, BOYD and HATCHETT, JJ., concur.
SUNDBERG, J., dissents.

ON REHEARING
ADKINS, Justice.
By petition for certiorari, we have for review a decision of the District Court of Appeal, Fourth District, (International Union of Operating Engineers, Local 675 v. Lassitter, 325 So.2d 408). This case has plowed through a slow, rough road of judicial labor, culminating in our quashal of the District Court decision and, now, by granting respondents' petition for rehearing.
An action was brought by Lassitter against union member Walton, the Local union and the International union for injuries sustained in union violence. The jury found for petitioner Lassitter and assessed compensatory damages of $240,000 jointly and severally against all of the defendants. The jury also awarded punitive damages in the amount of $10,000 against Walton, $300,000 against the Local union and $700,000 against the International union. Upon appeal, the finding of liability was affirmed but the verdicts for compensatory and punitive damages were reversed. International Union of Operating Engineers, Local No. 675 v. Lassitter, 295 So.2d 634 (Fla. 4th DCA 1974).
All parties then filed petitions for certiorari in this Court. The defendants' petitions were from that portion of the decision of the District Court affirming the liability and plaintiff Lassitter's petition was from that portion of the opinion reversing the damages. The defendants' cross-petitions for writ of certiorari were denied, but this Court granted plaintiff Lassitter's petition and quashed the decision of the Fourth District Court "insofar as it is inconsistent with Rinaldi v. Aaron, 314 So.2d 762, 79 A.L.R.3d 1132." The cause was then remanded for further proceedings consistent therewith. Lassitter v. Walton, 314 So.2d 761 *624 (Fla. 1975). This decision was brief, but confusing.
In a subsequent decision, upon our mandate, the District Court pointed out that the original opinion did three basic things: (1) affirmed the judgments as to liability; (2) reversed and remanded for a new trial on the issue of compensatory damages; and (3) reversed and remanded for a new trial on the issue of punitive damages. The District Court reasoned that numbers one and two stood undisturbed, but expressed deep concern as to their proper course of action in complying with our mandate to quash the opinion insofar as it was inconsistent with Rinaldi v. Aaron, supra. The District Court then said:
"A review of our opinion reveals, though, that we assigned two additional reasons as a basis for reversing the award of punitive damages and remanding that issue for a new trial, reasons that were not encompassed or contradicted by Rinaldi v. Aaron, supra, or otherwise compromised by Supreme Court action.
"First, we held:
"`It is our firm judgment that the awards singly and in combination are so manifestly excessive as to shock our judicial conscience. Under the circumstances the verdicts could only be indicative of the improper influences of passion and prejudice working on the jury. These influences probably emanated from usual well known union partisanships, excited by injuries to an innocent victim, coupled with the publicity and heated climate... .'" 325 So.2d at 409-10.
The District Court then said:
"Secondly, we held that, while an award of punitive damages was proper in the case, we were concerned with the amount of such award. We said:
"`[I]t is our understanding that there should be some reasonable, albeit imprecise, relationship between punitive and compensatory damages. Air Line Employees Ass'n Int. v. Turner, 291 So.2d 670 (3d D.C.A. Fla. 1974); Crowell-Collier Pub. Co. v. Caldwell, 170 F.2d 941 (5th Cir.1948); Hutchinson v. Lott, 110 So.2d 442 (1st D.C.A. Fla. 1959). With this background we opine that there is an impermissible and gross inbalance here between the actual damages suffered and the punitive damages awarded.' 205 So.2d at 640." 325 So.2d at 410.
The holding that there should be some reasonable relationship between punitive and compensatory damages is in conflict with the decision in Levine v. Knowles, 197 So.2d 329, 331 (Fla. 3d DCA 1967) and Hutchinson v. Lott, 110 So.2d 442, 445 (Fla. 1st DCA 1959). We have jurisdiction.
In Hutchinson v. Lott, supra, it was said:
"While we do not follow the rule established in some jurisdictions to the effect that punitive damages must be `in proportion' to the compensatory damages, in McLain v. Pensacola Coach Corp., supra, it was held that punitive damages are not recoverable unless actual damages are shown. The relation of punitive damages to actual damages cannot be reduced to a mathematical certainty and is dependent upon the facts of each case. Punitive damages are awarded as a punishment to a defendant and as a warning to deter him from committing a similar offense in the future. Miami Beach Lerner Shops, Inc. v. Walco Mfg. of Florida, Inc., Fla. App., 106 So.2d 233; Ross v. Gore, Fla., 48 So.2d 412. Accordingly, they must bear some relation to the amount that the defendant is able to pay since the pecuniary punishment to a man of large means would not be the same as to a man of small means. Maiborne v. Kuntz, Fla., 56 So.2d 720; Jones v. Greeley, 25 Fla. 629, 6 So. 448."
The court in Air Line Employees Ass'n International v. Turner, 291 So.2d 670 (Fla. 3d DCA 1974), construed the quoted language in Hutchinson as not being dispositive of the issue and then decided that a jury is not authorized to award punitive damages in "a sum which does not bear some reasonable relation to the compensatory damages awarded, and which is excessively out of relation to the latter." 291 So.2d 670 at *625 672. In Lan-Chile Airlines, Inc. v. Rodriguez, 296 So.2d 498 (Fla. 3d DCA 1974), the court relying on Hutchinson and Turner, directed a remittitur of a portion of a punitive damage award that was forty-four times the amount of the compensatory damages. Text writers acknowledge that there is a diversity of opinion among the jurisdictions whether punitive damages must bear a reasonable relation to the compensatory damages awarded, but conclude that Florida is aligned with those jurisdictions which require such a relationship. See 22 Am.Jur.2d Damages § 265, and cases collected thereunder.
Federal courts have come to conflicting conclusions in attempting to discern the Florida rule on the subject. Judge Hutcheson writing for the Fifth Circuit Court of Appeals in Scalise v. National Utility Service, 120 F.2d 938, 941 (5th Cir.1941), stated:
"In Florida as in the federal courts, the giving of punitive damages is not dependent upon, nor must it bear any relation to the allowance of actual damages... ."
Then in Crowell-Collier Pub. Co. v. Caldwell, 170 F.2d 941 (5th Cir.1948), the same judge opined that exemplary or punitive damages awarded must bear some, though not an exact relation to actual damages.
The next pronouncement by the Fifth Circuit Court of Appeals on the subject is found in Smith v. McNulty, 293 F.2d 924, 926 (5th Cir.1961):
"We think also that the award of punitive damages was not legally excessive. It bore a reasonable relationship to the actual damages, although appellant admits in his brief that such a relationship is not necessary under Florida law, citing the case of Hutchinson v. Lott, Fla.App., 110 So.2d 442. But cf. Crowell-Collier Pub. Co. v. Caldwell, 5 Cir.1948, 170 F.2d 941."
Finally, in Wynn Oil Co. v. Purolator Chemical Corp., 403 F. Supp. 226 (N.D.Fla. 1974), a federal district judge sitting in Florida stated:
"In the opinion of this Court, the punitive damage awards bear a reasonable relationship to the actual damages sustained by plaintiff. However, Florida law does not require that such a reasonable relationship exist, but only requires that some actual damage be shown and that the acts of defendants were done with malice. See Hutchinson v. Lott, 110 So.2d 442 (Fla.App. 1st 1959); and Smith v. McNulty, 293 F.2d 924 (5th Cir.1961)... ." 403 F. Supp. at 232.
The terms compensatory and actual damages have been used interchangeably by the courts in dealing with the problem at hand. This probably stems from the language in McLain v. Pensacola Corp., 152 Fla. 876, 13 So.2d 221 (1943), approving and applying the following quotation from 4 Am.Jur. 219:
"The general rule that exemplary or punitive damages are not recoverable in an action of tort unless actual damages are shown finds application in cases of assault and battery." 13 So.2d at 222.
The Court in McLain, supra, held that the failure to submit the issue of punitive damages to a jury was not ground for reversal where the jury found no liability on the underlying cause of action, because an action for punitive damages cannot be maintained independently of an action for compensatory damages. The term "unless actual damages are shown" was used in McLain as synonymous with "unless liability is shown on the underlying cause of action." 13 So.2d at 222.
In a suit for slander the First District Court held that "nominal" damages are "actual" damages for the purpose of supporting an award of punitive damages. Elyria-Lorain Broad. Co. v. National Com. Indus., Inc., 300 So.2d 716 (Fla. 1st DCA 1974), cert. discharged; National Com. Indus., Inc. v. Elyria-Lorain Broad. Co., 337 So.2d 809 (Fla. 1976). Some jurisdictions hold to the contrary. 22 Am.Jur.2d Damages § 242 and cases collected thereunder.
Nominal damages are awarded to vindicate an invasion of one's legal rights *626 where, although no physical or financial injury has been inflicted, the underlying cause of action has been proved to the satisfaction of a jury. See, for example, Tampa Electric Co. v. Ferguson, 96 Fla. 375, 118 So. 211 (1928); Williams v. Atlantic Coast Line R.R. Co., 56 Fla. 735, 48 So. 209 (1908); Lampert v. Judge and Dolph Drug Co., 238 Mo. 409, 141 S.W. 1095 (1911). Accordingly, the establishment of liability for a breach of duty will support an otherwise valid punitive damage award even in the absence of financial loss for which compensatory damages would be appropriate.
If a nominal damage award will support an award of punitive damages, then is it accurate to say that an award of punitive damages must bear some reasonable relation to the actual or compensatory damages awarded? We think not, if the statement of such a rule implies more than that a punitive award must bear some relationship to the fact of the injury or invasion of legal right and the cause thereof. See Hensley v. Paul Miller Ford, Inc., 508 S.W.2d 759 (Ky. 1974). It occurs to us that there is little sense in such a rule if the policy reasons for imposition of punitive damages are to be served, i.e., the theory of punishment, involving the ideas of retribution for gross, wanton or willful misconduct, and an example to deter from its repetition. 2 Sutherland on Damages, 3d ed. § 406, p. 1132. It is suspected that the idea of reasonable relationship arose simply out of a sense of orderliness to provide a "rule of thumb" or "rough working scale" to measure the exercise by the jury of its discretion in assessing punitive damages. McCormick on Damages, Sec. 85, p. 298. But as with so many "rules of thumb" which were intended only as broad guidelines, the concept has become, in some jurisdictions, an inflexible rule of law that translates into the application of strict mathematical formula.
The error in embracing such a rule of law is made apparent in circumstances where the conduct by a very affluent defendant is outrageous but the resultant injury or invasion of legal rights to the plaintiff is minimal, although the conduct has the propensity of causing great harm if continued. Subject to the other limitations mentioned in this opinion, the jury is the best judge of the amount necessary to be assessed in order to make an example of such a defendant and thereby deter him and others from such conduct in the future. The more pecunious the defendant the greater must be the punitive damages assessed in order "to get his attention" regardless of the amount of actual damages awarded the plaintiff. For these reasons we disavow the rule that punitive damages must bear some reasonable relationship to the actual damages awarded by the jury.
We now consider the amount of the awards. There are certain well-established rules which control a review of the question of excessiveness of a jury's verdict. The following formula first employed by Chancellor Kent in a libel case has been frequently quoted or paraphrased with approval in passing upon objections to verdicts in actions for bodily injury as excessive:
"The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess." Coleman v. Southwick, 9 Johns. (N.Y.) 45, 6 Am.Dec. 253 (1812).
In Seaboard Coast Line Railroad Company v. McKelvey, 270 So.2d 705 at 706 (Fla. 1973), we said:
"Consistently, our Courts have vested juries with the sound discretion to render verdicts in personal injury cases, upon the equally consistent admonition that there is ample evidence to support such verdicts and that the verdicts are not clearly arbitrary or so excessive as to indicate passion, prejudice, corruption, improper motive or to shock the judicial conscience."
Also in Odoms v. Travelers Insurance Company, 339 So.2d 196 (Fla. 1976), we said:

*627 "Under the general rule a verdict should not be disturbed on the ground of excessiveness unless it is manifestly so excessive as to shock the judicial conscience, or unless it is so excessive as to be indicative of prejudice, passion or corruption on the part of the jury, or unless it clearly appears that the jury ignored the evidence or misconceived the merits of the case relating to the amount of damages recoverable as, for example, by taking into consideration improper elements of damages." At p. 198.
Although the verdict may be for considerably more or less than in the judgment of the court it ought to have been, still the court should decline to interfere, unless the amount is so great or small as to indicate that the jury must have found it while under the influence of passion, prejudice, or gross mistake. In order to shock the sense of justice of the judicial mind the verdict must be so excessive or so inadequate so as at least to imply an inference that the verdict evinces or carries an implication of passion or prejudice, corruption, partiality, improper influences, or the like. See Damage Verdicts by Parmele, Vol. 1, § 1 (1972).
The correctness of the jury's verdict is strengthened when the trial judge refuses to grant a new trial or a remittitur. The appellate court may review the trial court ruling only for an abuse of discretion.
Two factors unite to favor a very restricted review of an order denying a motion for new trial on ground of excessive verdict. The first of these is the deference due the trial judge, who has had the opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record. The second factor is the deference properly given to the jury's determination of such matters of fact as the weight of the evidence and the quantum of damages.
The appellate court should not disturb a verdict as excessive, where the trial court refused to disturb the amount, unless the verdict is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.
This test should be applied in deciding whether a remittitur should be required as a condition for denying a motion for new trial. A court is never free to reduce a verdict, by remittitur, to that amount which the court itself considers the jury should have allowed. It can only be reduced to the highest amount which the jury could properly have awarded. See Taylor v. Washington Terminal Company, 133 U.S.App. D.C. 110, 409 F.2d 145 (1969), cert. denied 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85; Gorsalitz v. Olin Mathieson Chemical Corp., 429 F.2d 1033 (C.C.A. 5th 1970).
In the absence of improper influences a remittitur may be appropriate, but here the District Court concluded that the verdicts were indicative of improper influences of passion and prejudice working on the jury. The court in its opinion referred to the following:
"An appendix to the brief of the local union contains fourteen newspaper articles of moderate length which were published at various times during the trial. The articles discuss events leading to the trial and the trial progress. Some of the article headlines were: `Union Harassment Claimed in Trial,' and `More Testimony Given On Union Violence.' . . The trial itself brought heated exchanges. The trial court judge admonished one attorney for calling a witness a liar, was provoked to the point of threatening to jail a union attorney and the jury heard evidence during the trial of union harassment of a union member who testified for Lassitter." International U. of Op. Eng., Local No. 675 v. Lassitter, 295 So.2d at 639.
The court properly concluded that the amount of the damage awards, coupled with these outside influences, was such as to shock judicial conscience.
The portion of the opinion of the District Court in conflict with the views expressed herein is quashed, but the judgment or decision of the District Court is approved. This *628 cause is remanded to the Fourth District Court for the purpose of a reversal and a further remand for a new trial on the issue of damages only.
It is so ordered.
OVERTON, C.J., and BOYD, SUNDBERG and HATCHETT, JJ., concur.