458 So.2d 239 (1984)
The MIAMI HERALD PUBLISHING COMPANY, Petitioner,
v.
Aurelio ANE, Respondent.
No. 63114.
Supreme Court of Florida.
September 13, 1984.
Rehearing Denied November 27, 1984.
*240 Talbot D'Alemberte and Thomas R. Julin of Steel, Hector & Davis, Miami, and Richard J. Ovelmen, Gen. Counsel, Miami, for petitioner.
Francisco R. Angones and Christopher Lynch of Adams, Ward, Hunter, Angones & Adams, Miami, for respondent.
Parker D. Thomson, Sanford L. Bohrer and Charles V. Senatore of Thomson, Zeder, Bohrer, Werth, Adorno & Razook, Miami, and Barry Richard of Roberts, Baggett, LaFace, Richard & Wiser, Tallahassee, amicus curiae for Florida Press Ass'n.
George K. Rahdert and Patricia Fields Anderson of Rahdert, Anderson and Richardson, St. Petersburg, amicus curiae for Apalachee Pub. Co.
PER CURIAM.
Our jurisdiction in this cause, under article V, section 3(b)(4) of the Florida Constitution, is pursuant to a question certified by the Third District Court of Appeal in Miami Herald Publishing Co. v. Ane, 423 So.2d 376 (Fla. 3d DCA 1982):
[W]hether a plaintiff [who is neither a public official nor public figure] in a libel action is required under Florida law to establish as an element of his cause of action that the defendant published the alleged false and defamatory statements sued upon with "actual malice" as defined in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) [i.e., either with knowledge of [their] falsity or with reckless disregard of [their] truth or falsity] when the alleged false and defamatory statements relate to an event of public or general concern.
Id. at 378. The district court correctly answered the question in the negative, and we approve its decision.
The events preceding the publication by the Miami Herald of a newspaper article falsely indicating that the Monroe County Sheriff's office had said that respondent Ane was the owner of a beer truck containing marijuana are recounted in detail by the district court. Ane had no connection with the truck.
Prior to New York Times in 1964, Florida common law governed all defamation actions, and defendants who did not establish either a privilege or truth as an affirmative defense were subject to strict liability. If a privilege applied to the defendant, the plaintiff could overcome the privilege by proving that the defendant acted with express malice. Coogler v. Rhodes, 38 Fla. 240, 21 So. 109 (1897). Express malice encompasses "ill will, hostility, evil intention to defame and injure." Montgomery v. Knox, 23 Fla. 595, 606, 3 So. 211, 217 (1887).
*241 The United States Supreme Court in New York Times held that
[t]he constitutional guarantees [first and fourteenth amendment] require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"  that is, with knowledge that it was false or with reckless disregard of whether it was false or not.
376 U.S. at 279-80, 84 S.Ct. at 726. In Curtis Publishing Co. v. Butts, 388 U.S. 130, 164, 87 S.Ct. 1975, 1996, 18 L.Ed.2d 1094 (1967), the Court expanded first amendment protection of defamatory falsehoods published about public officials to include public figures  those persons "intimately involved in the resolution of important public questions, or [who], by reason of their fame, shape events in areas of concern to society at large." At that point, the common law of defamation was undisturbed when the plaintiff was neither a public figure nor a public official.
In Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), a plurality of the Court would have expanded first amendment protection to "all discussion and communications involving matters of public or general concern, without regard to whether the persons involved are famous or anonymous." Id. at 44, 91 S.Ct. at 1820. However, in Gertz v. Robert Welch, Inc., 418 U.S. 323, 346, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789 (1974), the Court expressly rejected the Rosenbloom plurality view:
The extension of the New York Times test proposed by the Rosenbloom plurality would abridge this legitimate state interest [in compensating individuals for harm inflicted on them by defamatory falsehoods] to a degree that we find unacceptable. And it would occasion the additional difficulty of forcing state and federal judges to decide on an ad hoc basis which publications address issues of "general or public interest" and which do not... . We doubt the wisdom of committing this task to the conscience of judges... .
At the same time, the Court precluded liability without fault:
We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.
Id. at 347, 94 S.Ct. at 3010 (footnote omitted). The Court also held that there can be no recovery by a private defamation plaintiff of presumed or punitive damages in the absence of a showing of New York Times malice. Id. at 349, 94 S.Ct. at 3011. Defamation plaintiffs who do not prove such malice by clear and convincing proof are limited to recovery for actual injury.
Clearly under Gertz the negligence standard of fault upon which the Miami Herald was found liable is sufficient and consistent with the full protection of the first amendment to the United States Constitution. The plaintiff is a private individual, not a public figure or public official. The Herald argues that this Court should hold that under Florida law there is a privilege to defame on matters of public or general concern. This is the same argument which the Rosenbloom plurality advocated and the Gertz court rejected when it declined to require state and federal judges to analyze publications in order to determine which are of general or public interest and which are not. The effect of Gertz is to treat all matters published as matters of general or public interest and to reject the proposition that these matters are qualifiedly privileged. We agree. Florida's concern for individual reputation is reflected in article I, section 4, of the Florida Constitution. This Court has not previously held that there is a qualified privilege for a newspaper or a private person to defame a private person merely because the defamatory communication is directed to a matter of public or general concern, and we decline to do so now. In our prior cases additional factors have been considered. For example, in Layne v. Tribune *242 Co., 108 Fla. 177, 181, 146 So. 234, 238 (1933), a newspaper had a privilege to publish an apparently authentic news dispatch received from and attributed to a generally recognized reputable news service agency (such as the Associated Press or Universal Press) in the absence of a showing that the publisher acted in a "negligent, reckless, or careless manner" (emphasis added). In Abram v. Odham, 89 So.2d 334 (Fla. 1956), the plaintiff publisher of political prognostications injected himself into a gubernatorial campaign and made derogatory remarks concerning a political candidate, giving the candidate a privilege to defend his candidacy and the publishing company a privilege to publish an accurate account of the candidate's remarks.[1] And in Gibson v. Maloney, 231 So.2d 823, 826 (Fla. 1970), the privilege applied to make "`fair comment' on a public matter relating in part to an individual who had by choice made himself newsworthy and a part of the passing scene." We found the plaintiff to be a public figure under both the common law and New York Times standards.
As can be seen by the above examples, the common denominator of our "fair comment" qualified privilege has always been that the plaintiff was a government official, political candidate, or otherwise a public figure due to fame, associations, or similar considerations. Moreover, under Florida common law, the privilege was always defeated by express malice, a lesser standard than the actual malice urged by petitioners. Petitioner would have us expand a lesser privilege into a much greater one and apply it to all manner of communication, to the detriment of private citizens. We are committed to robust and open debate, but find that the first amendment adequately provides the necessary protection. After Gertz, newspapers have more protection than ever before. We find that reasonable care is not too much to expect and that it encourages responsible reporting while allowing breathing room for mistakes to occur. We hold that it is sufficient that a private plaintiff prove negligence and answer the certified question in the negative.[2]
Petitioner contends that the articles were not defamatory and the newspaper was not negligent. Having independently examined the whole record, See Bose Corp. v. Consumers of United States, Inc., ___ U.S. ___, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), we agree with the district court that there was sufficient evidence on both issues upon which the jury could have reasonably found for the plaintiff.
Finally, petitioner argues that the damage award is erroneous because it was based on mental anguish and personal humiliation only, rather than injury to reputation. Actual damage to reputation is not required under Gertz, however, as long as there is evidence of some actual injury, of which injury to reputation is but one example. *243 Time, Inc. v. Firestone, 424 U.S. 448, 460, 96 S.Ct. 958, 968, 47 L.Ed.2d 154 (1976).[3]
The decision of the district court is approved.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN and SHAW, JJ., concur.
McDONALD, J., dissents with an opinion, in which EHRLICH, J., concurs.
McDONALD, Justice, dissenting.
We should hold that private individuals who bring libel actions arising from news reports of general or public interest must prove that the defamatory falsehood was published with knowledge of its falsity or with reckless disregard for the truth before a recovery is warranted. If the news media is to perform its role fearlessly and responsibly in our free society, it should not have to defend its inadvertent and unintentional errors. If, on the other hand, there is proof that a member of the news media published a defamatory falsehood, with knowledge of its falsehood or with reckless disregard for the truth thereof, it should be accountable. This test, in my judgment, is a substantial safeguard for the rights of the citizens and when balanced with the desire and need of a free and unnecessarily encumbered press is adequate.
The countervailing views are succinctly articulated by the judges of the Third District Court of Appeal. I congratulate all of them for their scholarly intellectual analysis. I simply cast my vote for Judge Hendry's views because I think that in today's society it is the one to follow. The standard, for libel purposes, for news stories of current events of public or general concern should be the same as that which exists for accounts of actions of public officials.
EHRLICH, J., concurs.
NOTES
[1] Crowell-Collier Publishing Co. v. Caldwell, 170 F.2d 941 (5th Cir.1948), was cited for the proposition that "[t]he defendant publishing company gave a fair and accurate account of the remarks made by the defendant Odham at a political rally, in accordance with its qualified privilege to publish matters of great public interest." Abram v. Odham, 89 So.2d at 336. Caldwell did indeed speak of a qualified privilege to publish matters affecting the interest of the general public, but went on to state:

A majority of the courts have held that the privilege of public discussion is limited to comment or opinion and does not extend to false assertions of fact. A minority have held that even false statements of fact concerning officers and candidates are privileged if they are made for the public benefit and with an honest belief in their truth.
Caldwell, 170 F.2d at 943 (emphasis supplied) (footnote omitted).
The Caldwell court found that the Layne holding showed that Florida has aligned itself with the minority, but, referring to Layne, "making plain the narrowness of the way and the straitness [sic] of the path when truth, though unwittingly, is forsaken, the court declares that wantonness, recklessness, or carelessness in making such publication would be an abuse of the privilege." Id. (emphasis added) (footnote omitted). Clearly the minority view recognizing the qualified privilege applies to publications about public persons and could, at least in some instances, be defeated by carelessness (negligence).
[2] This holding is consistent with our prior decisions. Firestone v. Time, Inc., 322 So.2d 69 (Fla. 1976).
[3] In Time, Inc. v. Firestone, the Court stated:

Petitioner has argued that because respondent withdrew her claim for damages to reputation on the eve of trial, there could be no recovery consistent with Gertz. Petitioner's theory seems to be that the only compensable injury in a defamation action is that which may be done to one's reputation, and that claims not predicated upon such injury are by definition not actions for defamation. But Florida has obviously decided to permit recovery for other injuries without regard to measuring the effect the falsehood may have had upon a plaintiff's reputation. This does not transform the action into something other than an action for defamation as that term is meant in Gertz. In that opinion we made it clear that States could base awards on elements other than injury to reputation, specifically listing "personal humiliation, and mental anguish and suffering" as examples of injuries which might be compensated consistently with the Constitution upon a showing of fault. Because respondent has decided to forego recovery for injury to her reputation, she is not prevented from obtaining compensation for such other damages that a defamatory falsehood may have caused her. (Id.)