489 So.2d 72 (1986)
Alphonse DELLA-DONNA, Appellant,
v.
GORE NEWSPAPERS COMPANY, a Delaware Corporation Authorized to Do Business in the State of Florida, and Hamilton C. Forman, Appellees.
Nos. 83-2146, 83-2437.
District Court of Appeal of Florida, Fourth District.
April 23, 1986.
Clarification and Rehearing Denied June 9, 1986.
*73 Frates Bienstock & Sheehe, Miami, Jonathan W. Lubell and Mary K. O'Melveny of Cohn, Glickstein, Lurie, Ostrin, Lubell & Lubell, New York City, and Robert J. O'Toole, Fort Lauderdale, for appellant.
Ray Ferrero, Jr., and Ricki Tannen of Ferrero, Middlebrooks & Strickland, Fort Lauderdale, for appellee, Gore Newspapers.
BARKETT, ROSEMARY, Associate Judge.
This appeal emanates from a final summary judgment for the Gore Newspaper Company (Gore) in a libel action brought by Alphonse Della-Donna (Della-Donna).
Della-Donna claims that Gore libeled him in a series of articles which ran in the Fort Lauderdale News from May 6, 1978, to February 13, 1979. The articles concerned a dispute between Della-Donna and the Trustees of Nova University over the final disbursement of a 14.5 million dollar gift to Nova, a private university located in Broward County. The trial court determined that Della-Donna was a limited public figure and that no genuine issue of material fact existed to show evidence of actual malice. Accordingly, the court entered summary judgment for Gore. We affirm.
Della-Donna is a lawyer who in 1971 provided some complex estate planning for his client, Leo Goodwin, Sr., which included the establishment of a foundation and a charitable remainder trust (Unitrust). Mr. Goodwin, Sr., died on May 28, 1971, without naming any beneficiaries of the trust.
In 1976, the Goodwin Foundation Trustees, of which Della-Donna was one, exercised their power under the Unitrust and designated trust beneficiaries which included Nova University. Approximately two years later, in 1978, appellant and Nova University became embroiled in a dispute *74 regarding the control of the university. Della-Donna advised the trustees of Nova University that Mr. Goodwin, Sr.'s desire was to help locally controlled institutions and that he had recently discovered that Nova's Board of Trustees was controlled by the New York Institute of Technology which, in turn, was controlled by the Schure family in New York. Della-Donna advised Nova's Trustees that the Goodwin Foundation Trustees were inclined to rescind the gift unless Nova agreed to be operated under "some semblance of local control."
Several subsequent meetings between Della-Donna and representatives of the university occurred in an attempt to resolve the dispute. On April 19, 1978, Della-Donna sent a "confidential" letter to all Nova Trustees informing them of the ongoing negotiations and advising that if local control was not effectuated he would be forced to rescind the gift.
On April 25, 1978, Nova filed a petition in the circuit court to force distribution of the gift. Upon the filing of this lawsuit, Gore learned about the dispute and began reporting it. On May 4, 1978, Della-Donna filed a complaint for declaratory relief on behalf of the estate of Leo Goodwin, Sr., charging that Nova had fraudulently misrepresented a material fact concerning its management and control, and seeking to rescind the gift.
Between May 1976 and October 1978, Gore ran a total of 78 articles covering the announcement of the Goodwin gift and the ensuing controversy over rescission. Della-Donna alleges that he was libeled in seven of these. The first six essentially involve reporting the charges made by Nova in court documents that Della-Donna had improperly charged the estate over one million dollars in fees. The last alleged libel involved the printing of an unfavorable letter to the editor concerning the lawsuit and the position taken by Della-Donna therein.
Della-Donna raises two points on appeal: (1) that the lower court erred in finding him to be a "limited public figure in a matter of public controversy"; and (2) that even if such a finding is correct, the lower court erred in finding that no genuine issues of material fact exist from which a reasonable jury could find actual malice.
In order to determine whether the "actual malice" standard of proof must be applied to Gore's conduct, the status of the plaintiff as a public official, "general" public figure, "limited" public figure, or private figure must be established. This necessitates a brief review of the law's evolution regarding the status of a plaintiff vis-a-vis the standard of proof.
Before 1964, the individual states were free to apply their own law, common or otherwise to the tort of libel. In Florida:
defendants who did not establish either a privilege or truth as an affirmative defense were subject to strict liability. If a privilege applied to the defendant, the plaintiff could overcome the privilege by proving that the defendant acted with express malice... . [which] encompasses "ill will, hostility, evil intention to defame and injure." [Emphasis added; citations omitted.]
Miami Herald Publishing Company v. Ane, 458 So.2d 239, 240 (Fla. 1984).
In 1964, in the landmark case of New York Times v. Sullivan, 376 U.S. 254, 269, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964), the United States Supreme Court noted that libel "must be measured by standards that satisfy the first amendment." The Court held that the Constitution limits a state's power to award any damages for libel in actions brought by public officials against critics of their official conduct unless he or she proves that the statement was made with "actual malice." Id. at 283, 84 S.Ct. at 727. In New York Times, the advertisement which was the subject matter of the libel claim involved "one of the major public issues of our time." Id. at 271, 84 S.Ct. at 721. According to the Court, the actual malice standard was mandated because "debate on public issues should be uninhibited, robust, and wide open...." Id. at 270, 84 S.Ct. at 721 (emphasis added).
*75 In Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the same strict standard of proving actual malice was extended to "public figure" plaintiffs. As in New York Times, the Court in Curtis was deciding a case which involved a public concern:
We note that the public interest in the circulation of the materials here involved, and the publisher's interest in circulating them, is not less than that involved in New York Times.

Id. at 154, 87 S.Ct. at 1991.
In the plurality opinion of Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 44, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), the Court indicated that the distinction between private and public figures was meaningless. As long as the defamatory statements involved "a matter of public or general interest," the New York Times standard would apply. Id. at 43-44, 91 S.Ct. at 1820. Three years later, however, in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Court held that the protections of New York Times did not extend as far as Rosenbloom had suggested.
Gertz clearly involved expression on a matter of public or general interest and concern, but the court held that the fact that expression concerned a public issue did not by itself entitle the libel defendant to the constitutional protections of New York Times. The Gertz court further refined the concept of "public figure" noting that there were two classes of public figures: "general public figures" who have fame or notoriety in a community and who are always for every purpose to be considered public figures and "limited public figures" who have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved" and who are public figures only with regard to certain issues. See id. at 345, 94 S.Ct. at 3009. Utilizing this analysis, the court determined that Gertz, who, as in this case, was a lawyer representing a client, was a private figure. The issue then became whether the New York Times standard of "actual malice" applied to a discussion of any issue of significant public interest when the person defamed therein was a private person. The court determined that in such a situation the standard of actual malice must be used to recover presumed or punitive damages, but that a lesser standard of fault as determined by each state could be used to recover actual damages if those damages could be proved. Id. at 348-50, 94 S.Ct. at 3011-12.
In Florida, our supreme court has adopted negligence as the applicable standard for recovery of actual damages in a case which involved a private figure and a public issue. Miami Herald Publishing Co. v. Ane, 458 So.2d 239 (Fla. 1984). Although language in Ane appears to interpret Gertz as eliminating the issue of public interest or concern from a discussion of the standard, the latest case from the United States Supreme Court, decided after Ane, interprets Gertz and makes clear that courts must consider whether the alleged libel concerns a matter of public or private concern. See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., ___ U.S. ___, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985).
In Dun & Bradstreet, the Supreme Court faced the issue of whether Gertz should apply when the plaintiff is private and the allegedly false and defamatory statements do not involve a public issue. The Court indicated that the pivotal question of whether speech addresses a matter of public concern must be determined by the expressions, content, form, and context as revealed by the entire record. Id. at ___, 105 S.Ct. at 2939. That determination must be made despite language in Gertz to the contrary. The Court concluded that an erroneous credit report did not involve a matter of public concern and accordingly permitted the recovery of presumed and punitive damages absent a showing of actual malice. Id. at ___, 105 S.Ct. at 2947-48. In light of Dun & Bradstreet, it appears the Supreme Court interprets the language in Gertz regarding determination of public versus private concerns *76 as simply a rejection of Rosenbloom. Thus, notwithstanding the reluctance to permit courts to determine what is and what is not a matter of general or public interest, courts are required to do so.
In reviewing the Supreme Court cases from New York Times through Dun & Bradstreet, two considerations seem to be required in determining the standard of proof in defamation cases: (1) whether the alleged defamation arose out of a matter of public or private concern; and (2) whether the plaintiff is a public official, public figure, or limited public figure or private person.
We have no trouble determining that the instant case involves alleged defamation arising out of a matter of public interest or concern. Nova University is an important part of its community and certain aspects of the disagreement between the Nova trustees and Della-Donna, such as local control and fiscal soundness, have an appreciable impact on the community. Thus, we believe the "speech" involved here addresses a matter of public concern in light of the "content, form, and context ... as revealed by the whole record." See Dun & Bradstreet, ___ U.S. at ___, 105 S.Ct. at 2947. Consequently, the next step is to determine the status of Della-Donna.
The parties agree that Della-Donna is not a public official or a general public figure. They disagree, however, on whether he is a "limited public figure" or simply a private plaintiff. Determining Della-Donna's status entails a two-step process. We must first identify a "public controversy" and secondly inquire into the nature and extent of the plaintiff's participation in that controversy. Street v. National Broadcasting Co., 645 F.2d 1227, 1234 (6th Cir.1981), dismissed pursuant to stipulation, 454 U.S. 1095, 102 S.Ct. 667, 70 L.Ed.2d 636 (1981). See Hutchinson v. Proxmire, 443 U.S. 111, 135, 99 S.Ct. 2675, 2688, 61 L.Ed.2d 411 (1979); Wolston v. Readers Digest Ass'n, 443 U.S. 157, 164-69, 99 S.Ct. 2701, 2706-08, 61 L.Ed.2d 450 (1979); Time, Inc. v. Firestone, 424 U.S. 448, 453, 96 S.Ct. 958, 964, 47 L.Ed.2d 154 (1976); Gertz, 418 U.S. at 345, 94 S.Ct. at 2997.
In the context of determining the status of a plaintiff, a public controversy has been defined as "any topic upon which sizeable segments of society have different, strongly held views." Lerman v. Flynt Distributing Co., 745 F.2d 123, 138 (2d Cir.1984), cert. denied, ___ U.S. ___, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985). Attracting the public's interest is not enough. Thus, an essentially private dispute such as a divorce, regardless of the public's interest, is not a public controversy. Firestone, 424 U.S. at 453-54, 96 S.Ct. at 964-65.
Similarly, in Hutchinson the Court determined that the "broad question of concern about [federal] expenditures" as it related to the plaintiff's receipt of a federal grant was not a "public controversy." 443 U.S. at 135, 99 S.Ct. at 2688. Hutchinson was a government funded research scientist whose research efforts were publicly criticized by Senator Proxmire who designated Hutchinson as a recipient of his well-known "Golden Fleece" awards. See also Wolston, 443 U.S. at 166 n. 8, 99 S.Ct. at 2707 (where the Supreme Court observed that it was difficult to determine with precision the "public controversy" into which the plaintiff allegedly thrust himself, but determined that Wolston was a private plaintiff because his actions did not constitute a voluntary thrusting or injecting into the alleged controversy).
In this case, although it is clear that the community had an interest in the outcome of the dispute, it is difficult to identify the public controversy with precision. Is it the issue of local control of Nova University or the fact that the university may suffer significant economic hardship if the Goodwin gift is not forthcoming? What exactly is the role of the public in this controversy? Is it anything more than taking sides in a disagreement between private litigants? Is the public interest in a community's university which is served by persuading a private donor to make a gift to a private university sufficient to constitute a public *77 controversy? Could public opinion sway the outcome?
We have no trouble determining that this dispute was a matter of public interest. Designating it a public controversy for purposes of the limited public figure analysis is, perhaps, more troublesome. Certain aspects of the disagreement between the Nova trustees and Della-Donna such as local control and fiscal soundness obviously impact on the public. The public in some measure was expressing its opinion through letters to the editor and editorials. These elements, among others, cast doubt on the view that this is strictly a private matter.
In Waldbaum v. Fairchild Publications, 627 F.2d 1287, 1297 (D.C. Cir.1980), cert. denied, 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980), the court articulated a test for the determination of a public controversy. The court stated:
A general concern or interest will not suffice... . [The court] should ask whether a reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution. If the issue was being debated publicly and if it had foreseeable and substantial ramifications for non-participants, it was a public controversy [footnotes omitted].
Applying this test to the instant case, the dispute involved in the instant case constituted a public controversy.
In addition to defining public controversy, the Waldbaum court also set out a three-part test for determining whether a person has become a limited-purpose public figure. "Under this test the court must determine that there is a public controversy; ascertain that the plaintiff played a sufficiently central role in that controversy; and find that the alleged defamation was germane to the plaintiff's involvement in the controversy." Dameron v. Washington Magazine, Inc., 779 F.2d 736, 741 (D.C. Cir.1985) (citing Waldbaum).
We have determined the existence of a public controversy. The question is whether Della-Donna played a central role in the controversy. The facts of this case require an affirmative answer to that question. It is true that Della-Donna was the trustee and the lawyer of the Trust in question. He had a duty to discharge his obligations as he saw them in order to effectuate his client's wishes. As a trustee, he participated in the designation of Nova as a beneficiary of the trust. As a trustee and lawyer for the trust he negotiated and litigated with Nova when he determined that the designation was an error and would not be in accord with the wishes of his deceased client and the settlor of the trust. Della-Donna argues that neither his actions as trustee and lawyer nor his position as a party in the litigation can make him a limited public figure. By placing primary emphasis on the plaintiff's motivation, Della-Donna forgets that "it may be possible for someone to become a public figure through no purposeful action of his own... ." Gertz, 418 U.S. at 345, 94 S.Ct. at 2997 (emphasis supplied). Dameron, 779 F.2d at 742.
This is not, however, one of those rare cases where the plaintiff became a limited public figure involuntarily. On the contrary, Della-Donna initiated a series of purposeful, considered actions, igniting a public controversy in which he continued to play a prominent role. Thus, Della-Donna fully met Waldbaum's second criterion: "The plaintiff either must have been purposely trying to influence the outcome or could realistically have been expected, because of his position in the controversy, to have an impact on its resolution." 627 F.2d at 1297. That Della-Donna was motivated by fiduciary obligations or ethical responsibilities is irrelevant.
Having determined Della-Donna to be a limited public figure, we have examined the record and concur with the trial court that no genuine issue of material fact exists from which a reasonable jury could find actual malice.
The summary final judgment is affirmed.
DOWNEY, J., and HURLEY, DANIEL T.K., Associate Judge, concur.