DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JAMES W. YOUNG, JR.,**
Appellant,

v.

**MARY STRUNK KOPCHAK,**
Appellee.

No. 4D22-2289

[August 16, 2023]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Janet Croom, Judge; L.T. Case No. 312021CA000808.

Clive N. Morgan of Morgan Legal, P.A., Jacksonville, and Laura H. Mirmelli of Busch Mills & Slomka, LLP, Milton, Georgia, for appellant.

Kevin M. Rollin of Napier & Rollin, PLLC, Vero Beach, for appellee.

KLINGENSMITH, C.J.

James W. Young, Jr., appeals the trial court's order granting final summary judgment in favor of Mary Strunk Kopchak in a defamation lawsuit arising from comments which Kopchak made in a social media post. Because we find genuine issues of material fact exist, we reverse.

Young and Kopchak were initially involved in a separate dispute relating to the ownership of a family business, Strunk Funeral Home ("the business"). Shortly before the death of Kopchak's father, who owned the business, Kopchak was appointed as the business's president. With the help of Kopchak's stepmother, Dorothy Strunk (who was also Young's aunt), Young attempted to sell the business without Kopchak's approval, leading Kopchak to challenge the sale in court.

During that litigation, Young made various statements regarding the lawsuit that were published in local newspapers. In response, Kopchak posted the following comment to a Facebook group regarding Young and the ongoing litigation:

It's sad that . . . Jim Young [thinks] it is just fine to make our personal, family business public information.  I suppose I understand Jim Young's motivation.  He is trying to undermine our business hoping to gain something for which he is not worthy.  He worked for Strunk many years ago.  *My father fired him for character unbecoming of a funeral director. That is fact.*  Unfortunately, unscrupulous people do unscrupulous things which I am afraid is the case with Jim Young & Dorothy Strunk as well as will be shown as our legal matters unfold.

(emphasis added).

Young then filed suit asserting one count of libel per se against Kopchak, claiming Young "enjoyed a reputation for honesty, integrity, and trustworthiness in this community and his profession" prior to Kopchak's Facebook comment, and that Kopchak "intentionally published" the comment "with the express intent to harm [] Young in his business . . . ." Kopchak countered with multiple defenses, notably that her comments were protected by the litigation privilege and Young was a limited public figure who "invited public comment and scrutiny of himself."

Kopchak moved for summary judgment and filed a supporting deposition from a former director at the business who recounted an event where Young was heard shouting expletives at guests who were attending a viewing.  The director testified that he had tried to stop Young from continuing this behavior, but when Young persisted, the director fired Young.  The director described Young's comments and actions that night as "conduct unbecoming of a funeral director."  During the deposition, the director denied having a dispute with Young regarding overtime pay, noting had any such disagreement existed, he would have referred it to Kopchak's father as the business's owner.

In opposition to summary judgment, Young filed an affidavit from a former employee of the business who attested that he had personal knowledge of the events which had occurred when Young left his employment.  That employee stated he was present when Young resigned "[a]s a result of his concerns about overtime pay" and after complaining about salary.  That employee also stated Young was never fired from the business.

The trial court granted final summary judgment for Kopchak, finding Young "voluntarily published statements" regarding the business litigation and, thus, Kopchak's comment posted on social media was protected by

the litigation privilege. The court further found Young was a limited public figure who had invited the comments, barring recovery even if the litigation privilege did not apply. This appeal followed.

The standard of review for an entry of summary judgment is de novo. *Volusia County v. Aberdeen at Ormand Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). Under Florida's new summary judgment standard, which mirrors the standard for directed verdict, the focus of the analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). As with the old standard, the moving party must prove there is no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A genuine dispute of material fact exists if 'the evidence is such that *a reasonable jury* could return a verdict for the nonmoving party.'" *Perez v. Citizens Prop. Ins. Co.*, 345 So. 3d 893, 895 (Fla. 4th DCA 2022) (emphasis added) (quoting *In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d 72, 75 (Fla. 2021)).

The first question presented is whether Kopchak was entitled to summary judgment as a matter of law under the litigation privilege pertaining to a business lawsuit for her statement in the Facebook post. Florida courts recognize a privilege for comments made during the course of litigation "no matter how false or malicious the statements may be, so long as the statements are relevant to the subject of the inquiry." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 607 (Fla. 1994). The purpose of the privilege is twofold: (1) to prevent the initial trial from "needlessly devolv[ing] into another trial; and (2) that the potential exposure to a subsequent lawsuit would have a chilling effect on litigants seeking to redress their injuries." *DelMonico v. Traynor*, 116 So. 3d 1205, 1214 (Fla. 2013).

Our decision in *Ball v. D'Lites Enterprises, Inc.*, 65 So. 3d 637 (Fla. 4th DCA 2011), is instructive. There, the plaintiffs filed a breach of contract action against a corporation. *Id.* at 638. The corporation then published "warnings to the public on their website stating that [the] plaintiffs had violated certain trademarks." *Id.* The plaintiffs claimed the statements were defamatory, but the trial court found the statements were "directly related to the litigation and thus were absolutely immune." *Id.* We reversed by analogizing "publication of statements on the internet to calling a press conference with the media or otherwise publishing defamatory information to the newspapers or other media" and noted comments made to media normally "do not have any functional tie[s] to a judicial proceeding." *Id.* at 639–40.

3

> [Absolute immunity] does not apply to or include any publication of defamatory matter before the commencement, or after the termination of the judicial proceeding (unless such publication is an act incidental to the proper initiation thereof, or giving legal effect thereto); *nor does it apply to or include any publication of defamatory matter to any person other than those to whom, or in any place other than that in which, such publication is required or authorized by law to be made for the proper conduct of the judicial proceedings.*

*Id.* at 640 (alteration in original) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 277 n.8 (1993)). When discussing the website comments in question, we observed the comments were "not made in the proceedings itself, nor [were they] made to a participant connected to the proceeding such as a witness." *Id.* at 641.

Like the statement in *Ball*, Kopchak's Facebook post was not connected to the business litigation by its content or by the site of its publication. *See id.* First, Kopchak's post was not made directly to Young but rather to a general community Facebook page. Second, Kopchak's post was made as a reply to a non-party's post on the same community page. Finally, the content of Kopchak's post does not directly relate to the business litigation and instead is about Young and his motives for bringing the suit. While Young's motives might be tangentially related to the business litigation, Kopchak's comment did not serve any direct purpose pertaining to the litigation itself. *Cf. McCullough v. Kubiak*, 158 So. 3d 739, 740–41 (Fla. 4th DCA 2015) (noting litigation privilege applied to defendant's comments made *during a deposition* and, thus, "bore some relation to settlement negotiations in that proceeding"). As such, Kopchak's post is not afforded immunity under the litigation privilege pertaining to the business lawsuit.

Next, Kopchak's claim that Young is a limited public figure is not substantiated because, based on the evidence proffered to the court on summary judgment, the extant business litigation does not clearly rise to the level of a public controversy. Limited public figures are individuals "who have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)). To determine whether one is a limited public figure, courts must "determine whether there is a 'public controversy'" and "then determine whether the plaintiff played a sufficiently central role in the instant controversy to be considered a public figure for purposes of that controversy." *Id.* at 845–46.

4

A public controversy is "any topic upon which sizeable segments of society have different, strongly held views." *Della-Donna v. Gore Newspapers Co.*, 489 So. 2d 72, 76 (Fla. 4th DCA 1986) (quoting *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 138 (2d Cir. 1984)). However, "[a]ttracting the public's interest is not enough." *Id.* In determining whether a controversy is public, a court "should ask whether a reasonable person would have *expected persons beyond the immediate participants in the dispute to feel the impact of its resolution.* If the issue was being debated publicly and *if it had foreseeable and substantial ramifications for non-participants*, it was a public controversy." *Id.* at 77 (emphases added).

The underlying legal dispute that was contested in the business litigation, despite whatever coverage was provided in local newspapers, does not appear by the record to have a substantial impact on anyone outside of the immediate parties to the case and their families. *Cf. Della-Donna*, 489 So. 2d at 73 (public controversy "concerned a dispute between Della-Donna and the Trustees of Nova University over the final disbursement of a 14.5 million dollar gift to Nova"); *Friedgood v. Peters Pub. Co.*, 521 So. 2d 236, 241 (Fla. 4th DCA 1988) (public controversy centered around the "highly publicized criminal prosecution[]" of the plaintiff and her father). While it is possible the funeral home and its eventual ownership might have some importance to the public, or at least the local community, the public's interest in the matter or its outcome was not established in the record below. *Cf. Arnold v. Taco Props., Inc.*, 427 So. 2d 216, 219 (Fla. 1st DCA 1983) (finding "there is competent substantial evidence in the record supporting a conclusion that an identifiable public controversy existed" (footnote omitted)). Here, the question of the funeral home's eventual owner does not clearly impact the public beyond creating merely curious spectators, nor does the record indicate sizable differences in public opinion about the litigation sufficient to make it a public controversy. *Cf. Della-Donna*, 489 So. 2d at 77; *Arnold*, 427 So. 2d at 219. Therefore, Young is not a limited public figure as a matter of law.

Finally, although Kopchak claims truth as a defense to her comments, the record evidence does not conclusively show her comments were either the whole truth or substantially true. *See Readon v. WPLG, LLC*, 317 So. 3d 1229, 1234 (Fla. 3d DCA 2021) ("Florida recognizes the substantial truth doctrine" which notes that "a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true." (quoting *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999))). Here, there is a factual dispute about whether Young's original employment with the business was terminated involuntarily due to Young's conduct with a client, as the director's deposition indicates, or voluntarily due to a

disagreement regarding overtime pay, as the employee's affidavit indicates. *See Glickman v. Potamkin*, 454 So. 2d 612, 613 (Fla. 3d DCA 1984) (reversing summary judgment in a defamation action because the defense of truth presents a question of fact to be determined by the jury).

The trial court did not rule the employee's affidavit was legally insufficient and, thus, not entitled to consideration as a matter of law.[1] On this record, the contradictory testimony created a genuine issue of material fact that cannot be resolved by the trial court on summary judgment.

Therefore, we reverse the trial court's final summary judgment entered in favor of Kopchak and remand for further proceedings.

*Reversed and remanded.*

FORST and ARTAU, JJ., concur.

*    *    *

**_Not final until disposition of timely filed motion for rehearing._**

---

[1] The recently amended Florida Rule of Civil Procedure 1.510(c)(4) states "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."